# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**KYMBERLI GARDNER**                                              **PLAINTIFF**

**v.**                                      **CAUSE NO. 1:15CV423-LG-RHW**

**CLC OF PASCAGOULA, LLC**
**d/b/a PLAZA COMMUNITY**
**LIVING CENTER**                                             **DEFENDANT**

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR ALTERNATIVELY FOR A NEW TRIAL AND GRANTING REMITTITUR

**BEFORE THE COURT** are the [81] Renewed Motion for Judgment as a Matter of Law or Alternatively, for a New Trial, and the [83] Alternative Motion for Application of Damages Cap and for Remittitur, both filed by the defendant CLC of Pascagoula, LLC d/b/a Plaza Community Living Center. The parties have fully briefed the Motions. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that neither a judgment as a matter of law nor a new trial are justified. However, Gardner's non-pecuniary damages will be capped at $50,000 pursuant to 42 U.S.C.A. § 1981a(b)(3)(A).

## BACKGROUND

Plaintiff Kymberli Gardner filed this lawsuit against her former employer, CLC of Pascagoula, LLC, alleging that she was sexually harassed by a patient housed in the nursing home where she was employed as a Certified Nursing Assistant. This Court granted summary judgment in favor of CLC. In remanding

this case for a jury trial, the Fifth Circuit stated that "[a]s we and other courts have recognized, the diminished capacity of patients influences whether the harassment should be perceived as affecting the terms and conditions of employment. We must decide when the allegations of harassment nonetheless become so severe or pervasive that fact issues exist requiring a jury to decide the question." *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 322 (5th Cir. 2019), *as revised* (Feb. 7, 2019). The Fifth Circuit determined that Gardner's allegations did reach that threshold. After a three-day trial, the jury determined that Gardner had been subjected to a hostile working environment and subject to retaliation. The jury awarded her $10,000 in back wages, $30,000 for past pain and suffering, and $30,00 for future pain and suffering.

## DISCUSSION

**1. Motion JMOL or New Trial**

CLC seeks judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), or in the alternative, a new trial pursuant to Fed. R. Civ. P. 59. According to Wright and Miller, "[t]he contrasts between the two motions are dramatic." 9B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2531 (3d ed.).

> On a motion for new trial, the district court has a wide discretion to order a new trial whenever prejudicial error has occurred. On a motion for judgment as a matter of law, it has no discretion whatsoever and considers only the question of law whether there is sufficient evidence to raise a jury issue. On a motion for new trial the trial judge may consider the credibility of witnesses and the weight of the evidence; on a motion for judgment as a matter of law, the judge may not.

*Id.*

A court may grant judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The Fifth Circuit has held that granting judgment as a matter of law is proper only when "the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden v. I'm Ready Prods., Inc.,* 693 F.3d 491, 498 (5th Cir. 2012) (quoting *Flowers v. S. Reg'l Physician Servs. Inc.,* 247 F.3d 229 (5th Cir. 2001)). A court must be "especially deferential" to the jury's verdict, *id.* at 499, and must review all evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

The standard for a Rule 59 motion for new trial is more relaxed. The Fifth Circuit has held that "[a] new trial may be granted, for example, if the [ ] court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted); *Seidman v. Am. Airlines, Inc.,* 923 F.2d 1134, 1140 (5th Cir. 1991). "In making this determination, the [ ] court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party." *Transworld Drilling,* 773 F.2d at 613.

The motion for JMOL or a new trial argues that 1) Gardner failed to meet her burden of proof on both the hostile work environment and retaliation claims; 2) the

damages award is not supported with sufficient evidence; and 3) the jury verdict was based solely on sympathy or emotion.

### A. Hostile Work Environment Claim

CLC first argues that there was insufficient or no evidence of two of the five hostile work environment claim elements: 1) harassment that affected a term, condition, or privilege of Gardner's employment; and 2) CLC knew or should have known of the harassment and failed to take prompt remedial action. CLC contends that as a consequence, Gardner's hostile work environment claim fails as a matter of law. The Court applies the Rule 50(a) legal standard to this argument, reviewing all evidence and drawing all reasonable inferences in favor of Gardner.

i). Evidence of Harassment That Affected a Term, Condition, or Privilege of Employment

Harassing conduct affects a "term, condition, or privilege of employment" so as to create a hostile work environment, "only if it is either 'severe' or 'pervasive.'" *Higgins v. Lufkin Indus., Inc.,* 633 F. App'x 229, 235 (5th Cir. 2015) (citations omitted). Although CLC argues here and during the trial that Gardner's testimony seemed to limit the scope of her hostile work environment to the events of her last day at work, the entirety of her testimony and that of the other witnesses did not support that conclusion. The jury was therefore instructed that it should consider all of the circumstances, including: the frequency of the conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interfered with Plaintiff Gardner's work performance as a certified nursing assistant.[1]

The jury considered testimony that Gardner was directly responsible for J.S.'s care two days out of the week for a period of less than six months. (Tr. Vol. 2 at 104-05.) She experienced sexually graphic comments and grabbing and groping from J.S. every day she cared for him. (Tr. Vol. 2 at 62-63.) Gardner was unable to attend work after her last encounter with J.S. and is now afraid when she cares for male patients. This is evidence from which a reasonable jury could have concluded that Gardner was subjected to conduct that was severe and/or pervasive, and therefore evidence of harassment that affected a term, condition, or privilege of Gardner's employment.

ii). Remedial Action

The Fifth Circuit "had no occasion to consider" the last element of Gardner's hostile work environment claim – whether CLC "knew or should have known of the hostile work environment but failed to take reasonable measures to try and stop it." *Gardner*, 915 F.3d at 327. CLC argues that there was no such evidence, but rather all witnesses testified about the measures CLC employed to handle J.S. Those measures included redirection, requesting assistance of another CNA or nurse, medical testing for infection, dispensing medication, special monitoring, and

---

[1] CLC argues that Gardner's testimony limited the scope of her hostile work environment claim to her last encounter with J.S. However, Gardner's testimony encompassed the entirety of her experience with J.S., culminating in the incident that led to her refusal to continue to work with J.S. (*See* Tr. Vol. 2 at 108, 129-30.)

-5-

arranging a psychiatric examination. Gardner testified that she and the other CNAs utilized these measures because J.S.'s actions made giving him care "hard, not just for me. It was hard for a lot of us."

Despite the evidence of the remedial measures employed by CLC personnel, the jury decided that CLC had failed to take adequate measures to stop or remedy the harassment Gardner received from J.S. -- presumably because the measures did not actually stop J.S.'s harassing conduct. This was a factual determination for the jury, and they were instructed that they could consider the effectiveness of the remedial measures. For these reasons, the Court finds the evidence sufficient to allow the jury to conclude that CLC knew or should have known of the hostile work environment but failed to take reasonable measures to try and stop it.

**B. Retaliation Claim**

On appeal, the Fifth Circuit upheld this Court's conclusion that there was inadequate circumstantial evidence of retaliation to survive summary judgment, but instructed the Court to consider Gardner's claim that she had direct evidence of retaliation. CLC now contends it is entitled to judgment as a matter of law because Gardner did not provide any direct evidence of retaliation. Gardner responds that the fact that CLC based its termination decision, at least in part, on her refusal to continue to work in a discriminatorily hostile or abusive environment is direct evidence of retaliation. The jury was instructed that it must consider whether Gardner's refusal was "protected activity" under Title VII, and they concluded that it was. CLC's citation of this protected activity as one of the reasons for Gardner's

termination is direct evidence of retaliation. *See, e.g., Larsen v. Maynard, Inc.*, No. 5:18cv5093, 2019 WL 2774329, at *5 (W.D. Ark. July 2, 2019). The jury was instructed that they

> need not find that the only reason for Defendant CLC's decision was Plaintiff Gardner's refusal to work in a discriminatorily hostile or abusive environment. But you must find that Defendant CLC's decision to terminate Gardner's employment would not have occurred in the absence of—but for—her refusal to work in a discriminatorily hostile or abusive environment.

(Tr. Vol. 3, at 12.) Even though there was evidence of other reasons for Gardner's termination, a reasonable jury could have concluded that Gardner would not have been terminated if she had been willing to continue to work with J.S. The Court therefore concludes that CLC is not entitled to JMOL or a new trial on the retaliation claim.

### C. Damages

Both of CLC's Motions challenge the jury's assessment of damages. In its JMOL motion, CLC argues that 1) Gardner's testimony that backpay owed was $9000 or $10,000 was unsubstantiated and speculative; 2) compensatory damages for emotional and mental injury were not supported by any evidence beyond Gardner's testimony that she was upset; and 3) future compensatory damages were not supported by evidence of a specific discernable injury to her future emotional state. In its Motion for Application of Damages Cap and for Remittitur, CLC makes an additional argument that the $60,000 emotional damages award is subject to a statutory $50,000 cap set out in 42 U.S.C. § 1981(b)(3)(A).

-7-

*i). The Statutory Damages Cap*

Title 42 U.S.C. § 1981a limits the amount of certain compensatory damages that may be awarded to a successful employment discrimination plaintiff depending on the size of the employer. In this case, CLC argues the only evidence presented regarding the number of its employees came from Brandy Gregg, the former Director of Nursing, who testified that "going back through review and memory recall, we had approximately 82 staff members" at the facility during 2014. (Tr. Vol. 3 at 143.) CLC argues that this number of employees – greater than fourteen and less than 101 – requires that the jury's pain and suffering damages award be capped at $50,000. Gardner argues that the statute applies only to an award for *future* pain and suffering, making the jury's $30,000 award for that damage category below the cap and therefore not subject to reduction.

The statute provides that

> [t]he sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000 . . . .

42 U.S.C.A. § 1981a(b)(3)(A).

A plain reading of the statute establishes that the cap applies to an award of 1) future pecuniary losses, 2) all nonpecuniary losses, and 3) punitive damages.

-8-

"Future" does not modify the categories of nonpecuniary damages set out in the statute. Other courts have interpreted the statute in this way. *See, e.g., Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 932 (8th Cir. 2010) ("Section 1981a(b)(3) permits an award of noneconomic damages for intentional discrimination in employment but sets limits on their amount corresponding to the size of a defendant business."). The jury's award for past and future emotional damages in this case is subject to the statutory cap.

In determining the level at which damages are capped for an employer, the relevant count of employees is to be made "in the current or preceding calendar year," which refers to the year of discrimination. *Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 175 (1st Cir. 2011). Gregg's testimony regarding the number of employees in 2014 based on her review of records and her recollection is adequate to establish CLC's inclusion in the § 1981a(b)(3)(A) category. The cap for that category – between fourteen and 101 employees – is $50,000 for nonpecuniary damages. Accordingly, Gardner's non-pecuniary damages award must be reduced from $60,000 to $50,000.

  *ii). Backpay Award*

In regard to the backpay award, the jury was entitled to credit Gardner's testimony of the wages she believed she had lost. Her testimony was conclusory, but the jury was instructed that "Gardner need not prove the amount of her losses with mathematical precision," and they were provided with no other backpay

evidence to consider. For these reasons, the Court finds no basis for remitting the backpay award.

### iii). *Sufficiency of Evidence of Emotional and Mental Injury*

CLC argues that there was insufficient evidence to support the past and future emotional damage awards of $30,000 each. To recover more than nominal damages for emotional harm, a plaintiff must provide evidence that an actual injury occurred and provide specific evidence of the nature, extent, and severity of the harm. *Miller v. Raytheon Co.*, 716 F.3d 138, 147 (5th Cir. 2013); *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238-39 (5th Cir. 2001) (citing, *inter alia, Patterson v. P.H.P. Healthcare Corp.,* 90 F.3d 927, 938 (5th Cir. 1996)). When damages are awarded for future emotional harm, the showing of damage must be linked to harm the plaintiff will suffer in the future. *See Thomas v. Tex. Dep't of Crim. Justice,* 297 F.3d 361, 371 (5th Cir. 2002) (remitting damages for future emotional distress in failure-to-promote case because the plaintiff's emotional difficulties had substantially lessened and because plaintiff "did not provide evidence tightly linking the denial of a promotion and future emotional harm"); *Lewallen v. City of Beaumont*, 394 F. App'x 38, 46 (5th Cir. 2010) (vacating future compensatory damages in failure-to-promote case because plaintiff did not adduce evidence sufficient to demonstrate the likelihood of "mental anguish in the future as a result of the constitutional violation that she experienced in the past").

"'[H]urt feelings, anger and frustration are part of life,' and are not the types of emotional harm that could support an award of damages." *Hitt v. Connell*, 301

-10-

F.3d 240, 250 (5th Cir. 2002) (quoting *Patterson,* 90 F.3d at 940). Compensable emotional distress may manifest itself as "sleeplessness, anxiety, stress, depression, marital strain, humiliation, emotional distress, loss of self esteem, excessive fatigue, or a nervous breakdown," and "physical manifestations may include ulcers, gastrointestinal disorders, hair loss, or headaches." *E.E.O.C. v. WC & M Enters., Inc.,* 496 F.3d 393, 402 (5th Cir. 2007) (quoting *Vadie v. Miss. State Univ.,* 218 F.3d 365, 376 (5th Cir. 2000)) (internal quotation marks omitted). *See Salinas v. O'Neill,* 286 F.3d 827, 832 (5th Cir. 2002) ("'Damages for emotional distress may be appropriate . . . where the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation.'") (quoting *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 488 (5th Cir. 2001)).

It is possible to prove emotional damages with a plaintiff's testimony alone, but to be sufficient the testimony must be "particularized and extensive, such that it speaks to the nature, extent, and duration of the claimed emotional harm in a manner that portrays a specific and discernable injury." *Brady v. Fort Bend Cty.,* 145 F.3d 691, 720 (5th Cir. 1998). The Court reviews the Fifth Circuit's guidance, set out in the cases below, to assess the sufficiency of the emotional damage evidence when, as in this case, only the plaintiff's testimony is offered.

On the insufficiency side is *Brady v. Fort Bend County*, a case in which the plaintiffs testified about various manifestations of distress, including nervousness, sleeplessness, stress, anxiety, and marital problems. *Brady*. 145 F.3d at 719. The plaintiffs also testified to spending too much time on the couch, being "highly

-11-

upset," not "accept[ing] it mentally," and experiencing "the worst thing that has ever happened to me[.]" *Id.* The court concluded that this testimony "hardly qualif[ied] as evidence of demonstrable emotional distress" because it was "vague and conclusory." *Id.* ("[W]hen the Plaintiffs do refer to specific manifestations of emotional harm – like nervousness, sleeplessness, or stress – they fail to elaborate with any detail").

In *Hitt v. Connell*, the plaintiff gave uncorroborated testimony about how emotionally trying his termination had been, how embarrassed and depressed he was over losing his job. The Fifth Circuit found the uncorroborated testimony of mental distress with no evidence of physical manifestations of stress to be insufficient to support a damages award and remitted the entire award. *Hitt*, 301 F.3d at 250-51.

In *Brown v. Mississippi Department of Health*, 256 F. App'x 710 (5th Cir. 2007), the Fifth Circuit also remitted the entire emotional damages award where the plaintiff testified that his employer's discrimination caused him mental anguish, emotional suffering, and stress resulting in marital difficulties and aggravation to his already-existing kidney stones. *Id.* at 711.

The Fifth Circuit also vacated a mental anguish award which was "premised solely on the testimony of [Plaintiff] and his wife" that being laid-off made Plaintiff feel "'sucker-punched'" and caused him chest pain, back pain, sleep disturbances, and emotional problems. *Miller.*, 716 F.3d at 143, 147. The court held that the testimony was legally insufficient to support any award for emotional harm because

-12-

> [Plaintiff] presented no expert medical or psychological testimony of the extent of his mental anguish. While [Plaintiff] testified that he suffered chest pain, back pain, sleep disturbances, he also admitted that he did not take any over-the-counter pain or sleep medications. Nor did [Plaintiff] seek the assistance of any health care professional or counselor.

*Id.* at 147.

Two cases illustrate when the Fifth Circuit finds a plaintiff's uncorroborated testimony of emotional damage to be sufficient. In *Vadie v. Mississippi State University*, 218 F.3d 365 (5th Cir. 2000), the plaintiff testified that

> [i]t destroyed me. It totally ruined me, and I become sick, totally ill, physically, mentally, and everything. I took many doctors, many pills. I did not know what to do, where to go, what to say. I did not know whether it was nighttime or daytime. I could not sleep for months at a time. Headache, nausea. Still I am under severe doctor surveillance because of what they have done to me . . . .

*Id.* at 377. This testimony was found sufficient to support a finding of actual injury but the jury's award was "entirely disproportionate to the injury sustained" and therefore remitted from $300,000 to $10,000. *Id.* at 377-78.

In *Dulin v. Board of Commissioners of Greenwood Leflore Hospital*, 586 F. App'x 643, 650 (5th Cir. 2014), the Fifth Circuit sustained the jury's award for emotional damages where the plaintiff testified that he had held his Board position for over twenty-four years and considered his relationship with the employees of the hospital to be like family. He testified that the Board was an important part of his law practice, and that being replaced because of his race was "humiliating," a "shock," and a "stressful situation" and caused him to close down his law practice sooner than he had intended.

-13-

In this case, when asked to explain how the work environment affected her ability to do her job, Gardner testified,

> Physically, I'm fine. You look at me, I'm fine. But inside, emotionally, I don't want to do this type of work any more because of that. Because I know all of them are not like that, but it is hard, it's hard now. I'm afraid. I'm afraid to even have a male patient now. I'm afraid . . . . And it bothers me. I have anxiety. I get nervous. It affected me. It affected me in a lot of ways, in a lot of ways, and I'm truly embarrassed to sit here in front of people and tell because it is embarrassing.

(Tr. Vol. 2 at 85-86.) There was no corroborating evidence of her emotional damage testimony. Gardner testified that she did not seek treatment for her anxiety, and she continues to work as a Certified Nursing Assistant.

The Fifth Circuit follows the "fundamental principle . . . that the fact-finder determines the quantum of damages in civil cases." *Hawkes v. Ayers,* 537 F.2d 836, 837 (5th Cir. 1976). The court "is especially disinclined - 'chary' - to disturb a jury's assessment of damages for grief and emotional distress." *Dulin*, 586 F. App'x at 650 (citing *Caldarera v. E. Airlines, Inc.,* 705 F.2d 778, 783-84 (5th Cir. 1983)). This is because "the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses." *Patterson,* 90 F.3d at 937-38.

In the Court's opinion, Gardner's testimony presents a very close question of sufficiency. Her statements about her work being hard, having anxiety, being bothered, and getting nervous are vague and conclusory. But Gardner's testimony about being afraid to have a male patient pulls her testimony into the realm of sufficiency under the precedent above. This is a concrete manifestation of emotional injury that can be expected to continue into the future. In the Court's

view, Gardner's testimony supports the jury awards for past and future emotional damages. Given the deference with which the Court is to treat the jury's assessment of the amount of damages, the Court does not find the amount of damages to be excessive. Therefore, the jury's emotional damages awards, already capped at $50,000 by statute, will not be further reduced or vacated.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [81] Renewed Motion for Judgment as a Matter of Law or Alternatively, for a New Trial is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [83] Alternative Motion for Application of Damages Cap and for Remittitur is **GRANTED** to the extent that Gardner's award of $60,000 for past and future emotional damages is capped at $50,000 by application of 42 U.S.C.A. § 1981a(b)(3)(A). The Motion is **DENIED** in all other respects. A final judgment will enter.

**SO ORDERED AND ADJUDGED** this the 25th day of July, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE